# GRAFTON,

## JULY TERM, A. D. 1847.

### DREW *v.* PHELPS.

The drawer of an accepted bill, who, upon the subsequent dishonor of it, and due notice thereof, has paid the amount to the holder, may maintain an action upon the bill itself, or recover the amount in an action for money had and received.

And if the bill appear to have been indorsed by several persons, it is not necessary for him to prove the indorsements. Possession of the bill, with evidence of dishonor and notice, is sufficient, *primâ facie*, to show that he had paid the holder, and taken it up. *Gilchrist*, J., dissented.

ASSUMPSIT for money had and received, and for money paid.

The plaintiff gave in evidence a bill of exchange drawn by him at Boston, Mass., where he resided, May 31, 1845, for $256.49, payable thirty days after sight, to the order of Messrs. J. W. Clark & Co., which was drawn upon the defendant, and directed to him at Lafayette, La., where he resided, and which was accepted by him June 11, 1845. The plaintiff also introduced evidence that on July 14, 1845, this bill, purporting to be indorsed by J. W. Clark & Co., and by E. W. Clark and Rice & Farnum, the last indorsement being in blank, was presented to the defendant at Lafayette by a notary public, at the request of the holder, A. C. Guildermeister, and payment demanded, and that the defendant answered that he could not pay it then, but would do so in fifteen or twenty days; whereupon the bill was noted and protested for non-payment, and due notice of the demand and non-payment given to the plaintiff and the several indorsers.

Drew *v.* Phelps.

The defendant objected that the plaintiff had not proved the indorsements to be genuine, or that the bill was presented by J. W. Clark & Co., or that the plaintiff had paid the amount of the bill to the holder. But the court admitted the evidence to prove the facts as far as material, and the jury returned a verdict for the plaintiff, which the defendant moved to set aside.

*Wilcox*, for the plaintiff.

*Britton*, for the defendant.

PARKER, C. J., delivered the opinion of the court. The case finds that the bill in question, drawn by the plaintiff, and which was payable thirty days after sight, was accepted by the defendant June 11, 1845; that on the 14th of July following, purporting to have been indorsed by the payees and by other persons, it was presented to the defendant by a notary public, at the request of the holder, and payment demanded; that the defendant answered that he could not pay it then, but would within fifteen or twenty days; whereupon it was noted and protested for non-payment, and due notice of the demand and non-payment given to the plaintiff, and to the several indorsers.

On these facts no question is raised respecting the regularity of the acceptance, the regularity of the presentment for payment, the dishonor, or the notice to the plaintiff and the indorsers. The bill was presented "by a notary at the request of the holder, A. C. Guildermeister." By this phraseology, in the absence of any evidence to the contrary, it must be intended that Guildermeister was the rightful holder. We are not at liberty to assume that "the holder" who caused the bill to be presented was a surreptitious holder, or to decide this case upon the mere possibility that such might be the fact, when there is not

the slightest evidence to support such a supposition, and when in fact no question looking to such a supposition was raised at the trial. The answer of the defendant, when the demand was made, indicated no doubt that the presentment was well made in behalf of the true holder.

On these facts it is clear that the plaintiff became liable to "the holder," to take up the bill. The plaintiff could not have resisted an action against him, as the drawer of the bill, by the holder. In such action he might perhaps have required the party bringing the suit against him to prove the indorsements, in order to show that he was the holder. But the plaintiff, in the absence of any thing to lead to a doubt on the subject, might well believe that the party having the possession of the bill, and who had caused it to be presented for payment, was the lawful holder; and might pay him and take up the bill without requiring proof of the several indorsements. On the evidence in this case, Guildermeister might have maintained trover against any one who had taken the bill from him without authority, and converted it; and the evidence upon which a court would have sustained such an action in his favor, as holder, is certainly sufficient *primâ facie* to justify the plaintiff in dealing with him as one whose possession was evidence of title.

And the case, finding due presentment, dishonor, protest, and due notice, thus fixing the liability of the plaintiff, his possession of the bill is, in the absence of any thing to cast a suspicion upon it, sufficient evidence that he has paid the amount to the party entitled to receive it. After a promissory note has become due, the possession of it by the maker is *primâ facie* evidence that he has paid it; the possession of it by an indorser, after dishonor and notice, evidence that he has discharged his liability to the indorsee, and thus becomes entitled to it.

Whether the drawer of a bill which has been accepted and then dishonored, may, on payment, make title to his

own bill as indorsee of it, as any third person might do, is a question admitting of discussion, and one which need not be settled in this case. If the plaintiff's claim to recover was in that form, he might, perhaps, be required to make the ordinary proof of the indorsements.

But the plaintiff's case is not that the bill was duly transferred to him by a regular course of indorsement, and that he may therefore maintain an action on the bill. It is that he drew the bill; that the defendant accepted it, which shows that he had funds of the plaintiff in his hands; that the defendant, having failed to pay, he, as drawer, became liable to pay the holder, which he has done, and that, on this evidence, he may maintain an action for money had and received by the defendant to his use.

The defendant objects (1) That the plaintiff did not prove the indorsements; to which the answer is, that as the plaintiff does not claim to recover as indorsee, such proof is unnecessary to show a title to recover. (2) That the plaintiff did not prove that the bill was presented by J. W. Clark & Co., the payees. The answer is, that the case finds that it was presented by a notary "at the request of the holder," which is all that is required to show a valid presentment. (3) That the plaintiff did not prove payment by himself; answer, that, being liable to pay the amount to the holder, the possession of the bill is of itself *primâ facie* evidence of such payment.

That the drawer of an accepted bill, who, upon the subsequent dishonor of it, and due notice thereof, has paid the amount to the holder, may maintain an action upon the bill itself, without making title through the indorsements, is fully settled. 1 Wils. 185, *Simmonds* v. *Parmenter;* S. C., 4 Brown's Part. Cas. 604, cited Chitty & Hulme on Bills 647; Bayley on Bills 212; 4 Bing. 390, *Hubbard* v. *Jackson;* 3 M. & S. 97, *Callow* v. *Lawrence;* Story on Bills 498; Chitty & Hulme on Bills 580; 3 M. & S. 91, *Mead* v. *Braham.*

Drew *v.* Phelps.

There is probably some error in the statement of the reasons for the decision reported in *Beck* v. *Robey*, 1 H. Black. 89, note. The true ground for it is stated by Mr. *J. Bayley*, in *Callow* v. *Lawrence*, which is that the payment of the bill by the drawer struck out the indorsement. The drawer, having taken it up, was remitted to his original rights. In the case last cited it was held that the drawer of a bill, payable to his own order, and which had been indorsed by several persons, might, after taking it up, put it in circulation on his own indorsement, and that the indorser might recover of the acceptor. The indorsements made before the drawer took up the bill were stricken out.

So far, therefore, from its being necessary to prove the indorsements in the case now before the court, the plaintiff might have stricken them out before proceeding to trial.

It may be that where a bill is payable to the order of a third person, the drawer of a payment cannot put it in circulation again on his own indorsement. It would cease to be negotiable by the payment, unless the drawer could procure a new indorsement, or what was equivalent to a new indorsement, of the party to whose order it was payable, so that a title to it could be derived by subsequent parties through that indorsement. But supposing that to be so, it will not serve to show that the drawer himself may not sustain an action upon it, or use it as evidence in an action for money had and received, which is all that is necessary in this case.

*Mead* v. *Braham*, 3 M. & S. 91, shows that the drawer, when he maintains an action on the bill, does not claim through the indorsements. It was there held that the drawer of a bill, after having taken it up, might sue a bankrupt acceptor who had not obtained his certificate, although a previous holder had proved under the commission. If he had been obliged to claim through that holder, the fact that he had proved the same bill would appear to have barred the action.

Drew *v.* Phelps.

Mr. Justice *Lawrence* said, in *Cowley* v. *Dunlap*, 7 D. & E. 572, that the drawer of a bill may, "after he has negotiated it and been obliged to pay it, maintain an action, or sue out a commission on the bill itself, just as if he had never parted with it." Where the drawer gets back the bill, his right revives, and the bill, which is the evidence of the contract of the acceptor, proves that his undertaking was to pay a certain sum of money at a fixed time." He expressed an opinion that the drawer was confined to his action on the bill.

But in *Thompson* v. *Morgan*, 3 Camp. 101, Lord *Ellenborough*, after some hesitation, admitted the bill as evidence in favor of a drawer under the count for money had and received ; and *Kingman* v. *Hotaling*, 25 Wend. 423, is directly to the same point, without hesitation.

Upon these authorities the drawer who, in pursuance of his legal liability, has taken up an accepted bill, which has been dishonored on presentment for payment, stands, as regards his remedy against the acceptor, like the payee of a promissory note which he has indorsed, and afterterward taken up as indorser upon its being dishonored. The obligation of the note is not thereby discharged. He may maintain a suit to recover the amount, either upon the note itself, or on the count for money had and received. If in such a case the note had upon it several indorsements, it would be preposterous to say that in order to maintain his action the payee must prove the indorsements ; for he had the right, and it would be a proper course for him to strike them all out immediately after taking up the note from the holder. He would merely be required to prove the making of the note, the dishonor and notice, and that he had again become the holder of it, and his possession of it would be sufficient evidence to show his title.

There must be                    *Judgment on the verdict.*

GILCHRIST, J., dissenting. This is an action of assump-

sit for money had and received, and for money paid. On the 31st day of May, 1845, the plaintiff drew a bill of exchange on the defendant, payable thirty days after sight to the order of J. W. Clark & Co. It was directed to the defendant at Lafayette, in Louisiana, where he resides, and accepted by him on the 11th of June, 1845. The acceptance was proved.

The bill purports to have been indorsed by the drawees, J. W. Clark & Co., by E. W. Clark, and by Rice & Farnum, the last indorsement being in blank.

The bill was presented to the defendant for payment, at the request of A. C. Guildermeister, who held it, by a notary public, was protested for non-payment, and notice was given to the plaintiff and to the parties whose names appear as indorsers.

The defendant objects that the plaintiff has not proved the indorsements by Clark & Co., and by the other parties whose names appear as indorsers, nor that the bill was presented by Clark & Co., to whom it was in the first instance payable, and has not proved that he has paid the amount to the holder.

Was the proof of either or of all these facts necessary?

An acceptance of a bill is *primâ facie* evidence that the acceptor has received value from the drawer, or that he has the drawer's funds in hand; and its effect is a promise, for a good and valuable consideration, to pay the amount for which the bill is drawn, to the party to whom it is made payable; who may be the drawee, or any one holding the bill by regular indorsement under him; and in default of such payment upon presentment of the bill at its maturity, the acceptor is bound, by force of his undertaking as such, to pay the drawer such sums as he has been compelled by such default to pay to the holder, together with the customary damages. *Vere* v. *Lewis*, 3 T. R. 183; *Kendall* v. *Galvin*, 15 Me. 101; *Simons* v. *Parmenter*, 1 Wil. 185.

The last named action was in favor of the drawer against the acceptor of a bill which had been presented by the payee for payment, and had not been indorsed; and the declaration was upon the bill. The point was raised and fully discussed, and it was determined that such special action might be maintained. The only evidence was the bill and acceptance, and that the plaintiff had paid the payee the amount of it, with the customary charges, without any other evidence that the defendant had funds of the plaintiff. So that the case stands as an authority upon two points. One is, that the drawer of the bill may maintain a special action against the acceptor upon the bill. The other is, that the acceptance of itself is *primâ facie* evidence, like a promissory note, of a consideration as between the drawer and acceptor.

The doctrine of *Kingman* v. *Hotaling*, 25 Wend. 423, is the same, with this difference, that the same facts would be competent evidence upon the money counts. In both cases the bill had not passed, before its dishonor, from the hands of the payee.

From these cases the present materially differs. It is said that it does not present the point that the bill was dishonered in the hands of the payee, or in the hands of any one deriving a title to it by indorsement under him; and that it does not of course appear that the plaintiff has been compelled to pay it, or that he has paid it to any one who had the power of compelling him to pay it, which is the same thing in effect, and essentially a part of the plaintiff's title.

*Chitty* says that when the drawer sues on a bill payable to a third person, in order to show his interest therein it is necessary to state that it was dishonored, and that it was taken up and paid by him. 2 Chit. Pl. 148, n. And so are the precedents, 1 Wentworth 292, where the form is that the plaintiff " was forced and obliged to pay, and has paid," &c.

Whatever it is necessary, in a special count, to allege, it is necessary, under the general count, to prove in these cases upon bills. Bailey on Bills 312. These forms, therefore, confirm what would seem to be the result of just reasoning, that the plaintiff must show that he paid the bill, not as a volunteer to a casual holder, not entitled to its possession, but to an actual holder under a genuine indorsement.

If this were not required of him, and he should, either with or without suit, pay it to a holder under a forged indorsement, a question might arise as to the rights of the just owner of the security, who had been tortiously deprived of its possession.

Is there any evidence of the transmission of the bill by regular indorsement to the hands of the party in whose behalf the payment was demanded? It is said that where payment was demanded, the defendant promised or proposed to pay the bill in fifteen or twenty days, and that he thereby admitted the title of the party demanding, and waived all exception to the course of its transmission to his hands.

But it is not apparent that any such effect should be attached to a mere unaccepted proposition to vary the effect of a previous acceptance, if such be deemed to be the fair import of the language used.

And if such were not its due import, it seems to have no further significance than as a renewal of the undertaking involved by the prior act of acceptance. He said that he could not pay when the bill was presented for payment. The bill was therefore dishonored. A present right of action upon the acceptance arose in behalf of the several parties entitled, whoever they were; and his saying that he would do something else as a substitute for his broken contract, could scarcely have been intended by himself, or have been understood by others, as a waiver of the terms by which alone he could have been holden

by the contract. The most that could reasonably have been inferred from his language was a recognition of the liabilities which he had assumed by the acceptance, and a proposition to vary its terms in the article of time.

What were the liabilities assumed by him on accepting the bill, and what did the acceptance bind him to do ?

The general rule, that is perfectly established by the authorities, is, that the acceptance after sight, whether before or after the indorsement, admits the genuineness of the signature of the drawer ; but there is no such implied admission on the acceptor's part, of the signature of the payee, or of any other indorser. Story on Bills, sec. 262 ; Bailey on Bills 313, 314 ; *Smith* v. *Chester*, 1 T. R. 654 ; *Robinson* v. *Yarrow*, 7 Taunt. 455.

The reason for this distinction is a very obvious one. The acceptor is presumed to know the handwriting of the drawer, whose funds he holds, and with whom the acceptance has been arranged. But the indorsers are all strangers to the consideration, and it would defeat many of the conveniences of this kind of paper, and impede its free negotiation, if the acceptor were bound at his peril to inquire into the genuineness of the indorsements. Story, sec. 263.

There is, therefore, no admission that the indorsements are genuine in the mere fact of acceptance, nor in the subsequent promise or proposition to pay in fifteen or twenty days, which was no more than a recognition of the subsisting liability ; a repetition of the promise, with perhaps an application for delay, which was not acceded to.

I am unable, in consequence, to concur with the majority of the court in the opinion that there was sufficient evidence in the case, and that the ruling of the court below was upon this point correct.

*Judgment on the verdict.*